IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIVE BARON,<br>            Plaintiff,<br><br>       v.<br><br>ABBOTT LABORATORIES,<br>            Defendant. | CIVIL ACTION<br><br><br><br><br>NO.  14-4706 |

DuBois, J.                                                                                              February 17, 2016

## M E M O R A N D U M

### I.     INTRODUCTION

This is an employment discrimination case. Plaintiff, Clive Baron, alleges that he was fired by his former employer, defendant Abbott Laboratories ("Abbott"), because of his age. In his Complaint, Baron claims that Abbott's decision to terminate his employment violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., the Florida Civil Rights Act of 1992 ("Florida Civil Rights Act"), Fla. Stat. §§ 760.01, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951, et seq. Presently before the Court is Abbott's Motion for Summary Judgment, filed July 31, 2015. For the reasons that follow, the Court grants Abbott's Motion for Summary Judgment, and enters judgment in favor of Abbott and against Baron.

### II.     BACKGROUND

The facts of this case as set forth in the parties' briefs and accompanying exhibits are summarized as follows. The facts are not contested except as otherwise noted.

#### A.     Baron's Employment at Abbott

Baron was born in 1953. Def.'s Statement of Facts ¶ 6. In 2007, Baron was recruited by Isaac Friedman, the founder and CEO of a company called STARLIMS. Pl.'s Statement of Facts

¶ 4. STARLIMS's primary business was selling an eponymous software platform to scientific laboratories and industry. The STARLIMS software is a "laboratory information management system" with a "unified web-based platform" that helps researchers to "manage complex testing and workflows, and facilitate automated processes and calculations" in order to "increase efficiency and mitigate errors."[1] Def.'s Statement of Facts ¶¶ 2-3. From 2007 until March 2010, Baron held the position of Chief Business Development Officer at STARLIMS and reported directly to Friedman. Pl.'s Statement of Facts ¶ 4.

In March 2010, Abbott acquired STARLIMS. Pl.'s Statement of Facts ¶ 5. Friedman became Division Vice President and General Manager of a new STARLIMS Division at Abbott. Pl.'s Statement of Facts ¶ 5. Baron became General Manager for Europe and Africa in the STARLIMS Division and reported directly to Friedman. Pl.'s Statement of Facts ¶ 5. While he was General Manager for Europe and Africa, Baron led the negotiations that resulted in the acquisition of four STARLIMS Division business partners in France, the Netherlands, the United Kingdom, and Israel. Pl.'s Statement of Facts ¶ 7. Baron also started a new STARLIMS South Africa operating entity. Pl.'s Statement of Facts ¶ 9. During his first two years at Abbott, Baron oversaw significant business growth in Europe, and STARLIMS Europe increased sales from $3 million to $16 million. Pl.'s Statement of Facts ¶ 10. During this period, Baron received performance ratings of "Exceeds Expectations," the highest rating. Pl.'s Statement of Facts ¶ 10.

In March 2012, approximately two years after the STARLIMS acquisition, Abbott underwent an internal reorganization that created a new division named Abbott Informatics Systems ("AIS"). Pl.'s Statement of Facts ¶ 12. At that time, AIS consisted of STARLIMS and OneLab, another laboratory information management system. Pl.'s Statement of Facts ¶ 12.

---

[1] *See* Abbott Informatics, Products, STARLIMS, https://www.abbottinformatics.com/us/products/lims.

Friedman was promoted to Division Vice President for AIS and Baron was promoted to a position titled "Manager of Global Commercial Operations," effectively General Manager of all of STARLIMS. Def.'s Statement of Facts ¶ 15; Pl.'s Statement of Facts ¶ 12. At the time he became General Manager of STARLIMS, Baron was responsible for four regions: North America, Europe and Africa, Asia Pacific, and Latin America. Pl.'s Statement of Facts ¶ 12. For the year 2012, Baron was rated "Achieved Expectations" for his job performance. Pl.'s Statement of Facts ¶ 12.

In July 2012, Friedman's supervisor, Ed Michael, left Abbott, and Brian Blaser replaced him as Executive Vice President of the Diagnostics Division. Pl.'s Statement of Facts ¶ 14; Def.'s Statement of Facts ¶¶ 9-10. Blaser was born in 1964. Friedman remained employed at Abbott pursuant to a three-year employment contract set to expire in April 2013, part of the STARLIMS acquisition. Pl.'s Statement of Facts ¶ 14. Following Michael's retirement, Friedman informed Blaser that he planned to retire at the end of his contract. Pl.'s Statement of Facts ¶ 14.

In March 2013, David Champagne was announced as Friedman's successor as Division Vice President for AIS. Pl.'s Statement of Facts ¶ 16. Prior to coming to Abbott, Champagne worked for an Abbott competitor, Thermo Fisher Scientific. Pl.'s Statement of Facts ¶ 16. Champagne was born in 1956. Def.'s Statement of Facts ¶ 25. Friedman allegedly told Baron that Baron was "too old" to be considered for the Vice President for AIS position. Pl.'s Statement of Facts ¶ 15.

Champagne became Baron's direct supervisor as head of AIS in April 2013. Def.'s Statement of Facts ¶ 24. Champagne also directly supervised Scott Goss, the General Manager of OneLab. Def.'s Statement of Facts ¶ 20. Scott Goss was born in 1971. Def.'s Statement of Facts

¶ 14. Baron and Goss were the only General Managers who reported directly to Champagne. Def.'s Statement of Facts ¶ 25.

In 2013, the performance of AIS as a whole, both STARLIMS and OneLab, did not meet Abbott's projections. Def.'s Statement of Facts ¶¶ 35-39. As part of a restructuring in the summer of 2013, Champagne, Blaser, and other Abbott executives decided to eliminate the OneLab division. Def.'s Statement of Facts ¶ 26; Plaintiff's Resp. to Def.'s Statement of Facts ¶¶ 26-28. As a result, Goss's position as General Manager of OneLab was eliminated and his employment was terminated. Def.'s Statement of Facts ¶¶ 26-27. Goss was forty-two years old when he was fired.

In October and November of 2013, Champagne discussed further restructuring of AIS with Blaser and several Abbott Human Resources executives. Def.'s Statement of Facts ¶ 40. As part of this restructuring, Champagne made the decision to eliminate Baron's position as General Manager of STARLIMS. Def.'s Statement of Facts ¶ 41. At his deposition in this case on April 15, 2015, Champagne explained that he wanted "to take a layer out of the organization, so that we could make decisions and act on them much . . . more quickly." Def.'s Statement of Facts Ex. E, at 24. Champagne also wanted "more direct visibility into all of the workings of the business in the field. And as such, all of his director reports essentially reported directly to me." Def.'s Statement of Facts Ex. E, at 25.

In December 2013, Champagne informed Baron that his position was being eliminated. Pl.'s Statement of Facts ¶ 19. At that meeting, Champagne told Baron that he eliminated Baron's position "to shake things up." Pl.'s Statement of Facts ¶ 19. Before and after this meeting, neither Champagne nor any other Abbott employees made any negative comments regarding Baron's job performance. Pl.'s Statement of Facts ¶ 20. Baron's employment at Abbott ended

4

effective December 31, 2013. Compl. ¶ 29. Baron believes that his employment was terminated because of his age. Def.'s Statement of Facts Ex. A, at 85-86. At the time of Baron's firing, Baron was sixty years old and Champagne was fifty-six years old.

When Baron's position was eliminated in December 2013, several of the regional general manager positions that reported to Baron in his role as General Manager for STARLIMS were vacant. Pl.'s Statement of Facts ¶¶ 24-25. Specifically, the positions of General Manager of Europe and Africa and General Manager of North America were not filled and the Country Managers for these regions had been reporting to Baron directly. Pl.'s Statement of Facts ¶¶ 24-25.

In January 2014, Abbott promoted the Country Manager for the United Kingdom, Simon Wood, to the General Manager of Europe and Africa position. Pl.'s Statement of Facts ¶¶ 24, 26. Wood was born in 1959. Def.'s Statement of Facts ¶ 18. Wood had previously reported directly to Baron. Pl.'s Statement of Facts ¶ 26. In mid-2013, before the elimination of Baron's position at Abbott, Champagne and Baron had discussed Wood's promotion to General Manager of Europe and Africa, at that time, under Baron as Global Manager of STARLIMS. Def.'s Statement of Facts ¶ 18.

Also in January 2014, Abbott promoted the General Manager for Latin America, Iberia, and Canada, Tamir Gottfried, to the General Manager of North America position. Def.'s Statement of Facts Ex. C at 13. Gottfried was born in 1974. Def.'s Statement of Facts Ex. C., at 13. Like Wood, Gottfried reported directly to Baron before his promotion. Pl.'s Statement of Facts ¶ 25. In the summer of 2013, Baron assigned the additional responsibility of overseeing Canadian operations to Gottfried, who had previously been General Manager for Latin American and Iberia. Pl.'s Statement of Facts ¶ 25.

In February 2015, just over a year after Baron's departure, Abbott hired Richard Lanchantin as AIS Director of Global Sales and Services Operations. Pl.'s Statement of Facts ¶ 48. Lanchantin was born in 1956. Def.'s Statement of Facts Ex. H, at 5. Lanchantin was recruited by Champagne while Lanchantin was employed by Thermo Fisher Scientific. Def.'s Statement of Facts Ex. H, at 18. Lanchantin had previously worked under Champagne for two years at Thermo Fisher before Champagne left to join Abbott. Def.'s Statement of Facts Ex. H, at 20.

In May 2015, Champagne reduced his level of work responsibility at Abbott for personal reasons. Def.'s Statement of Facts ¶¶ 50-51. As a result, Lanchantin was promoted to Senior Director of Global Commercial Operations at AIS. Def.'s Statement of Facts ¶ 52. Many of the regional General Managers who were reporting directly to Champagne and had previously reported to Baron began reporting to Lanchantin. Def.'s Statement of Facts ¶ 53. Thus, Lanchantin's role as Senior Director of Global Commercial Operations at AIS in May 2015 mirrored the role that Baron had performed prior to the elimination of his position in December 2013. Def.'s Statement of Facts ¶ 54. In May 2015, Lanchantin was 59 years old.

**B. Procedural History**

On May 14, 2014, Baron filed a verified charge of discrimination with the Equal Opportunity Commission ("EEOC") and cross-filed the charge with the Pennsylvania Human Relations Commission and the Florida Commission on Human Relations. Pl.'s Statement of Facts ¶ 31. In the charge, Baron asserted a claim of age discrimination on the basis of (1) Abbott's failure to consider him for Champagne's position and (2) his termination from Abbott in December 2013. On August 12, 2014, Baron filed his Complaint in this action, in which he asserts claims for age discrimination in violation of ADEA, the Florida Civil Rights

6

Act, and PHRA. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c)(1).

Following discovery, on July 31, 2015, Abbott filed the instant Motion for Summary Judgment. In the Motion, Abbott argues that Baron has (1) failed to make out a *prima facie* case that his employment was terminated in December 2013 as a result of age discrimination and (2) failed to show that Abbott's legitimate nondiscriminatory reason for terminating Baron was a pretext for age discrimination. Abbott also argues that any claim for age discrimination based on Abbott's failure to promote Baron in April 2013 to the Division Vice President Position at AIS is time-barred.

### III. APPLICABLE LAW

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions,

conclusory allegations or suspicions" to support a claim. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). The party asserting a fact "must support the assertion by . . . citing to particular parts of material in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

## IV.     DISCUSSION

ADEA prohibits age discrimination by employers against any employee over the age of forty. 29 U.S.C. §§ 623(a)(1), 631(a).[2] ADEA claims are subject to the three-prong burden-shifting analysis originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Plaintiff bears the burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff employee establishes a *prima facie* case, the burden shifts to the defendant employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* This burden is one of production, not persuasion. *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). If defendant offers a legitimate nondiscriminatory reason, in order to survive summary judgment, plaintiff must submit evidence "to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.* Ultimately, plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 n.10 (3d Cir. 2003).

---

[2] The same legal standard applies to Baron's claims under ADEA, the Florida Civil Rights Act, and PHRA. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) ("[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." (citations and quotations omitted)); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.").

### A. *Prima Facie* Case

Abbott argues that Baron has failed to establish a *prima facie* case because no reasonable jury could conclude that Baron has produced sufficient evidence to support an inference of age discrimination. The Court agrees.

To establish a *prima facie* case of age discrimination under ADEA, plaintiff must show that (1) he is over forty years old; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) he was replaced by a sufficiently younger person to permit an inference of age discrimination. *Smith*, 589 F.3d at 689. Two of these elements are not in dispute. During the relevant times, Baron was over forty years old and he was sixty years old at the time he was fired. The parties agree that Baron was qualified for his position.

#### 1. Adverse Action

The parties do not dispute that Baron's termination in December 2013 constituted an adverse action under ADEA. However, in his Complaint and motion papers, Baron also asserts a claim for failure to promote based on Abbott's failure to consider him for Champagne's position in April 2013 after Friedman's retirement. Abbott argues that any failure to promote claim is time-barred because Baron did not file his EEOC charge until May 2014. The Court agrees. In so-called "deferral states," such as Pennsylvania, an ADEA charge must be made with the relevant state agency within 300 days of when the alleged unlawful employment practice occurred. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014) (citing 29 U.S.C. §§ 626(d)(2), 633(b)). Baron has identified no reason for the Court to excuse this condition precedent to suit. Thus, the Court concludes that the only actionable adverse action in this case is the termination of Baron's employment at Abbott in December 2013.

### 2. *Inference of Age Discrimination*

To satisfy the fourth element of the *prima facie* case, plaintiff must show that the employer filled his position with someone "sufficiently younger to permit an inference of age discrimination." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 699 (3d Cir. 1995). The replacement employee need not be under forty years old and there is "no magic formula to measure a particular age gap." *Id.* The United States Court of Appeals for the Third Circuit has concluded that a four-year gap in age is sufficient, while an eleven-month gap is not. *Compare Sempier v. Johnson & Higgins*, 45 F.3d 724, 730 (3d Cir. 1995) *with Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1087 (3d Cir. 1992).

Plaintiff has the burden of producing evidence that he was replaced by a younger employee or that his job functions were assumed by a younger employee. In a case in which there is a dispute over whether an employee has been replaced, courts evaluate factors such as the job titles of the employee and his purported replacement, their respective levels of responsibility, and their respective supervisors. *See Andersen v. Mack Trucks, Inc.*, Civil Action No. 11-2239, 2015 WL 4579053, at *7-8 (E.D. Pa. July 30, 2015) ("Courts analyzing the fourth prong must 'look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." (quoting *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004))).

Baron argues that Gottfried and Wood were promoted to regional General Manager positions after his departure from Abbott, and that Gottfried and Wood can be used to establish an inference of discrimination. The Court rejects this argument because neither Gottfried nor Wood were promoted to Baron's position as Manager of Global Commercial Operations, or General Manager of all of STARLIMS. Instead, Gottfried and Wood were promoted to regional

General Manager positions for North America, and Europe and Africa respectively. Had Baron's position not been eliminated, both Gottfried and Wood would have reported to Baron in their new roles. Thus, neither Gottfried nor Wood filled Baron's position, either in terms of title or job responsibilities.

Baron avers that at the time he was fired he was "performing the functions" of General Manager of Europe and Africa and General Manager of North America. However, this is only true in so far as Baron was performing the functions of General Manager of all of STARLIMS worldwide. The changes in structure at AIS during 2013 collapsed Baron's job functions upwards into then-fifty-six year-old Champagne's role as Division Vice President of AIS, rather than devolving downward to the regional General Managers. In March 2013, when Champagne took over AIS, only two General Managers reported directly to Champagne: Baron as General Manager of STARLIMS and Goss as General Manager of OneLab. By the end of 2013, both of these positions had been eliminated and Champagne oversaw the regional general managers directly. The Court concludes that no reasonable jury could find that Gottfried and Wood "replaced" Baron because neither Gottfried nor Wood took over Baron's job responsibilities as General Manager of all of STARLIMS.

Instead, the employee who replaced Baron was Lanchantin in May 2015, when he took over equivalent responsibilities to Baron as the new Senior Director of Global Commercial Operations at AIS. Lanchantin took over the direct supervision of the regional general managers under Champagne. At the time he was promoted, Lanchantin was fifty-nine years old, just one year younger than Baron was at the time he was fired. This one-year age gap is insufficient to create an inference of age discrimination.

The Court's conclusion is supported by the fact that Baron has presented, as will be discussed below, no other circumstantial evidence to support an inference of age discrimination. For example, Baron has presented no comparator evidence (other than the promotion of his subordinates to regional General Manager positions), no evidence of age-discriminatory comments, and no evidence of any pattern or practice of age discrimination at Abbott. The record, when viewed as a whole, demonstrates that Baron was fired at age sixty by his fifty-six-year-old boss and was replaced just over a year later by a fifty-nine-year-old.

### B.  Legitimate, Nondiscriminatory Reason for Termination

Assuming *arguendo* that Baron could make out a case of *prima facie* age discrimination, the burden shifts to Abbott to demonstrate that there was a legitimate, nondiscriminatory reason for termination. The burden on the defendant is only a burden of production, not persuasion, and is "relatively light." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Defendant can satisfy this burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.*

Over the course of this litigation, Abbott has provided several reasons for Baron's termination. At the December 2013 meeting, Champagne told Baron that Baron's position was being eliminated to "shake things up." In response to Baron's interrogatories propounded during this litigation, Abbott took the position that Baron was "terminated because his position was eliminated as part of a business decision to flatten the structure of" AIS. Pl.'s Statement of Facts Ex. J, at 1. At his deposition in April 2015, Champagne testified that he eliminated Baron's position because:

> I wanted to take a layer out of the organization, so that we could make decisions and act on them much . . . more quickly. I also wanted much more direct visibility into all of the workings of the business in the field. And as such, all of his director reports essentially reported directly to me.

12

Def.'s Statement of Facts Ex. E, at 24-25. The Court concludes that Abbott has satisfied its light burden of producing evidence of legitimate, nondiscriminatory business reasons for termination, specifically, a reorganization of AIS.

### C. Pretext

Abbott argues that Baron has not produced evidence creating a genuine dispute of material fact that the proffered legitimate, nondiscriminatory business reasons for eliminating Baron's position were pretextual. The Court agrees and concludes that, even if Baron had established a *prima facie* case, no reasonable jury could conclude that Abbott's legitimate, nondiscriminatory reason for termination was pretextual.

To establish pretext, a plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes* 32 F.3d at 764; *see Robinson v. Matthews Intern. Corp.*, 368 F. App'x 301, 304 (3d Cir. 2010) (applying *Fuentes* in ADEA age discrimination claim). Plaintiff must present evidence that will "allow the factfinder to reasonably infer that each of the employer's proffered nondiscriminatory reasons was either a *post hoc* fabrication or did not actually motivate the employment action" by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 764-65. Plaintiff must do more than simply show that the employer's decision was wrong or mistaken because plaintiff bears the burden of proving that the adverse action was caused by discriminatory animus. *Id.*

13

Baron sets forth three arguments for why the evidence in this case demonstrates pretext. First, Baron argues that there are inconsistencies in Abbott's proffered reasons for eliminating his position. Second, Baron avers that Gottfried and Wood were promoted after he was fired. Third, Baron argues that there is no other reason, other than age, that could have justified his firing. The Court rejects these arguments.

With regard to Baron's first argument that there are inconsistencies in Abbott's legitimate, nondiscriminatory business reason for termination, Baron points to what he believes to be three different reasons offered by Abbott for his termination: (1) Champagne's statement in the December 2013 meeting that Abbott wanted to "shake things up;" (2) Abbott's responses to interrogatories in this litigation in which Abbott stated that "plaintiff was terminated because his position was eliminated as a business decision to flatten the structure of" AIS; and (3) Champagne's testimony during his April 2015 deposition.

The Court concludes that no reasonable jury could conclude that there is any inconsistency in these statements. Rather, they represent three different ways of saying the same thing. Champagne's statement that he wanted to "shake things up" is subject to a variety of reasonable interpretations. However, any interpretation of "shake things up" is consistent with Abbott wanting to "flatten the structure of" AIS or with Champagne's deposition testimony in this case. At his April 2015 deposition, Champagne testified that:

> I wanted to take a layer out of the organization, so that we could make decisions and act on them much . . . more quickly. I also wanted much more direct visibility into all of the workings of the business in the field. And as such, all of his director reports essentially reported directly to me. . . . Almost every single one that was on his org chart, [all] of the country managers in Europe. The one for Latin America and Canada. The four individuals running the [United States] commercially. The person running Asia/Pacific commercially. The customer operations sales ops person. The marketing person, I think, before [Baron] left, came over to work for me.

14

Def.'s Statement of Facts Ex. E, at 24-25. No reasonable trier of fact could find Champagne's testimony that he wanted to "take a layer out of the organization" inconsistent with either a desire to "shake things up" or a business decision to "flatten the structure of" AIS.[3]

Second, Baron argues that pretext can be inferred from the promotion of Gottfried and Wood. The Court rejects this argument for the reasons previously discussed because neither Gottfried nor Wood replaced Baron. In addition, plaintiff may not "selectively choose a comparator," because the court must consider the employer's actions toward all members of the allegedly more favored group. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). In this case, Baron focuses solely on the allegedly favorable treatment of Gottfried and Wood after his firing, but ignores the fact that Abbott also fired Goss, the only other General Manager in AIS who was at the same supervisory level as Baron and who was eighteen years younger than Baron. No reasonable jury could infer pretext from the treatment of Gottfried and Wood, particularly in light of Abbott's treatment of Goss.

---

[3] In paragraph 45 of Abbott's Statement of Undisputed Facts, counsel for Abbott avers "Baron's termination was not a result of his job performance, but rather the result of the underperformance of the AIS division, which he led," and cites for this proposition a portion of Champagne's April 2015 deposition. Baron argues that this statement is inconsistent with the "shake things up" justification for his firing because it refers to the underperformance of the AIS division. However, Champagne made no reference to the AIS division in the cited part of his deposition testimony, which is as follows:
>  Q: So it was your decision in 2013 to terminate [Baron's] position with the company, right?
>  A: Yes.
>  Q: With the ultimate effect of causing the termination of his employment, correct?
>  A: Yes.
>  Q: And do you agree that [Baron's] termination was without regard to his job performance?
>  A: Yes.

Def.'s Statement of Facts Ex. E, at 24:11-20. No reasonable factfinder could interpret Champagne's sworn statement at his deposition as inconsistent with the prior reasons provided for eliminating Baron's position.

Baron's final argument amounts to an assertion that Abbott's business reason for terminating him was misguided. Baron testified at his deposition in February 2015 that

> I was one of the best people in this industry, which is a niche industry and highly specialized. That my skills and my abilities were well suited towards their [Abbott's] goals. And that they were happy to have me there and given the performance I produced over the years, I believe that was consistent with my performance . . . . They terminated me without any good reason, without any good explanation, stating that they . . . cannot say anything bad about my performance or about me, that they thought my integrity was beyond reproach . . . .

Def.'s Statement of Facts Ex. B, at 84-85. Baron further stated that "given my track record, with STARLIMS and the years I was there and my contribution, . . . I can only surmise that there's one reason for doing that [terminating Baron] and that's age discrimination because there is no other good reason." Def.'s Statement of Facts Ex. B, at 85.

This argument is unavailing. "[F]ederal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997) (citations and quotations omitted). Baron has failed to direct the Court to a single piece of circumstantial evidence supporting his argument that he was fired because of his age. He has provided no evidence of age-discriminatory comments, no evidence of inconsistency in Abbott's reason for termination, no evidence that he was replaced with a younger individual, no evidence that other younger employees were treated more favorably, and no evidence of any pattern or practice of age discrimination. The Court also notes that Baron was fired by Champagne, who is just three years younger than Baron himself, weakening any argument that Champagne fired Baron because of his age. *See Elwell v. PP&L, Inc.*, 47 F. App'x 183, 189 (3d Cir. 2002) ("Elwell's case is further weakened by the fact that Sobeck was fifty years old at the time he made his hiring choice."). Thus, Baron has not satisfied

16

his burden of proving that Abbott's nondiscriminatory business reason was a pretext for age discrimination.

## V. CONCLUSION

For the foregoing reasons, Abbott's Motion for Summary Judgment is granted. Judgment is entered in favor of Abbott and against Baron. An appropriate order follows.